Filed 5/4/23  P. v. Underwood CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDRE M. UNDERWOOD,<br><br>    Defendant and Appellant. | B320234<br><br>(Los Angeles County<br>Super. Ct. No. A371643) |

APPEAL from an order of the Superior Court of Los Angeles County, Kerry R. Bensinger, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Andre M. Underwood appeals from the trial court's postjudgment order denying his petition for vacatur of his murder conviction and resentencing pursuant to Penal Code[1] section 1172.6 (former § 1170.95).  Underwood contends the trial court erred by denying his petition on the basis that he was the actual killer.  We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY[2]

### *Murder Conviction*

In 1981, Underwood was involved in the robbery and killing of Joe Miyoshi, who died of a gunshot wound to the chest.  Underwood was tried by jury.  The prosecution presented evidence that four young men decided to commit a robbery and took a 12-gauge shotgun with them to accomplish the crime.  They happened upon Miyoshi in a van in an alleyway.  One of the young men pointed the gun at Miyoshi, and Miyoshi threw money out of the window.  Miyoshi then tried to back up the van and escape, but hit a telephone pole.  He opened the van door and threw out more

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The facts and procedural history up to the most recent section 1172.6 evidentiary hearing following remand are taken from this court's prior opinion in *People v. Underwood* (Nov. 24, 2020, No. B304411 [nonpub. opn.]).

money. He begged the young man holding the shotgun not to shoot him. One of the young men saw Underwood, who was walking through the alley, and called him over to them. Underwood joined them and took the shotgun. He held Miyoshi at bay as the others ran. One of the young men looked back and saw Underwood shoot Miyoshi in the chest. Underwood then fled with the others to a friend's house, where they divided Miyoshi's money between them. Under questioning on two occasions by officers investigating the robbery and murder, Underwood gave varying accounts, but consistently admitted happening upon the robbery in progress, arriving only after Miyoshi had surrendered most, if not all, of the money. Underwood consistently denied participation in carrying out the robbery and murder, but he admitted taking a share of the money.

At trial, the prosecutor proceeded on the alternative theories that Underwood was either (1) guilty through a felony murder theory of liability (which could only result in a verdict of first degree murder), or (2) the actual killer (in which case he could be found guilty of either first or second degree murder). The jury found Underwood guilty of second degree murder (§ 187, subd. (a)) and robbery (§ 211). The jury found true the allegation that a principal used a firearm in the commission of both crimes (§ 12022, subd. (a)), but the jurors were unable to reach a verdict as to the allegations that Underwood personally used a firearm in the offenses. (§§ 12022.5, 1203.06, subd. (a)(1).)

3

Underwood was sentenced to 15 years to life in prison for murder, plus one year for the firearm allegation in that count. The court imposed and stayed a sentence of one-third of the middle term of one year on the robbery count, plus one year for the firearm allegation.

### *Proceedings in the Court of Appeal and the Supreme Court*

The Court of Appeal affirmed the judgment, but remanded the matter to the trial court for preparation of a new abstract of judgment that would correctly reflect Underwood's custody credits. Subsequently, the Supreme Court granted Underwood's request for a hearing and transferred the matter back to the appellate court for reconsideration in light of *People v. Croy* (1985) 41 Cal.3d 1.[3]

---

[3] In *People v. Croy, supra*, 41 Cal.3d at pages 11 through 12, the Supreme Court held that the trial court erred by giving an aiding and abetting instruction that did not require the jury to find that the defendant shared the perpetrator's intent to commit or facilitate the commission of the robbery at issue in that case. *Croy* further held that the error was prejudicial, and reversed a murder and an attempted murder conviction in addition to the robbery conviction, because the jury could have found the defendant guilty of the murder charges on the basis of a felony-murder theory of liability for which the robbery charge was the predicate crime. (*Id.* at pp. 11–21.)

Following the remand, the appellate court held that Underwood's culpability as a perpetrator of the robbery had been established as a matter of law. With respect to the murder conviction, the appellate court held that, having found Underwood to be an intentional perpetrator of the robbery as a matter of law, it necessarily followed that he was guilty of first degree felony murder. Although the court's determination was inconsistent with the jury's verdict of second degree murder, it concluded that the inconsistency was likely an act of leniency on the part of the jury. The court concluded there was no reason to reverse the guilty verdict for second degree murder, which was more favorable to defendant, where defendant was guilty of first degree felony murder as a matter of law. The Court of Appeal again affirmed the judgment, but remanded the matter to the trial court for preparation of a new abstract of judgment that would correctly reflect Underwood's custody credits.

***Petition for Resentencing***

On July 1, 2019, Underwood filed a petition for vacatur of the murder conviction and resentencing under former section 1170.95. The People filed a response on August 30, 2019, contending, as relevant here, that Underwood was ineligible for relief because he was the actual killer, as evidenced by the record of conviction. The trial court

appointed counsel. On January 6, 2020, defense counsel filed a reply to the People's response.

At the hearing on the petition, the trial court found Underwood prima facie ineligible for relief because the Court of Appeal's opinion indicated that he was the actual killer. Underwood timely appealed.

## *Appeal*

On appeal, this court reversed the trial court's order because the jury's inability to reach agreement regarding Underwood's personal use of a firearm precluded the trial court from finding, purely as a matter of law, that Underwood was the actual killer. Further, the trial court could not use the facts recited in the appellate opinion to establish ineligibility as a matter of law.

## *Remand*

Upon remand, the trial court held an evidentiary hearing. Among other evidence, the court considered Underwood's statements made in connection with a parole eligibility hearing. Specifically, Underwood admitted that he had killed Miyoshi and expressed remorse for the pain he had caused. The trial court gave "great weight" to Underwood's statements, and after consideration of those statements and other evidence offered at trial, the court denied the section 1172.6 petition based on a factual finding

that Underwood was the actual killer beyond a reasonable doubt.

## DISCUSSION

*Section 1172.6*

Effective January 1, 2019, the Legislature amended sections 188 and 189 "as to the 'felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Sen. Bill No. 1437 (2017–2018 Reg. Sess.); Stats. 2018, ch. 1015, § 1, subd. (f).) As amended, the law defining malice provides that except for first degree felony murder, 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3); *People v. Eynon* [(2021)] 68 Cal.App.5th [967,] 974.) By this change, the Legislature intended that '[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' (Stats. 2018, ch. 1015, § 1, subd. (g).)" (*People v. Basler* (2022) 80 Cal.App.5th 46, 54, fn. omitted.)

As relevant here, pursuant to section 1172.6, subdivision (a)(1) to (3), a defendant must file a petition in

the sentencing court averring that:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . .  [;]  [¶]  (2) The petitioner was convicted of murder . . . following a trial . . . .  [;]  [¶]  [and] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019."  (See *id.*, subd. (b)(1)(A).)

Upon receipt of a petition meeting these requirements, the trial court will appoint counsel, if requested.  (§ 1172.6, subd. (b)(3).)  The prosecutor must file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response.  (§ 1172.6, subd. (c).)  When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (*Ibid.*)  Within 60 days of issuance of the order to show cause, the trial court shall hold a hearing "to determine whether the petitioner is entitled to relief."  (§ 1172.6, subd. (d)(1) & (3).)

"At the hearing . . . the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective

January 1, 2019. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. . . . If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

The trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable doubt. (*People v. Clements* (2022) 75 Cal.App.5th 276, 296–297.)

*Analysis*

Underwood contends that statements made by prison inmates in connection with an application for parole should be deemed presumptively unreliable, and that the trial court erred by considering his statements. Underwood concedes that he did not preserve the issue for review because he failed to object on this basis at the section 1172.6 hearing. He argues that this court should consider the issue nonetheless, because it would have been futile for him to raise an objection in the trial court and/or the issue presented to this court involves a pure question of law based on undisputed facts. We agree with the People that Underwood forfeited this contention by failing to make a specific objection at the evidentiary hearing. The appellate courts are barred from reversing a judgment based on an

9

alleged erroneous admission of evidence absent a showing on the record of a clear, specific objection to the evidence or a motion to strike it. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; *People v. Myles* (2021) 69 Cal.App.5th 688, 697.)

Even if Underwood had preserved the issue, we would reject it. In 2022, the Legislature amended section 1172.6 to expressly set forth the types of evidence that are admissible in an evidentiary hearing under subdivision (d)(3). The statute provides: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."

Underwood does not contend, pursuant to any provision of the Evidence Code, that the trial court abused its discretion by admitting the evidence. Nor does he argue that statements made in connection with a parole eligibility hearing are not new or additional evidence within the plain

10

meaning of Penal Code section 1172.6. Instead, he asks this court to "craft a new legal standard," and hold that all statements made by an inmate in connection with parole proceedings are presumptively unreliable. Underwood cites to no precedent that would authorize us to announce such a rule, or explain how such a rule would be consistent with the Evidence Code or with the standards that have been clearly set forth in Penal Code section 1172.6 by our Legislature.

Underwood argues that we should adopt this blanket rule because inmates have an incentive to lie in order to obtain release on parole. In *People v. Mitchell* (2022) 81 Cal.App.5th 575, the defendant made a similar argument. The appellate court rejected the argument as contrary to the words and purpose of section 1172.6. (*Id.* at p. 588.) *Mitchell* observed, "The overall goal of the petitioning process here is to make the punishment fit the crime in a precise and particularized way. The Legislature sought to ensure murder culpability is commensurate with a person's individual actions. [Citation.] [¶] That takes facts." (*Id.* at p. 587.) "The trial judge is ideally situated to determine whether the incentives at a specific parole hearing mesh with the statute's goal of aligning punishment with true culpability. When there are valid reasons to doubt the probity of a parole hearing statement, the trial judge can hear and appraise arguments in the case's context and accord the statement due weight. Trial judges are expert at evaluating—word by word—whom and what to believe in individual situations. No reason exists to preempt trial

11

judges' particularized evaluation with our own blanket rule of exclusion." (*Id*. at p. 590.)

Underwood asserts that the "parole board . . . always assumes that any denial of culpability is evidence of a psychological shortcoming on the inmate's part rather than an expression of a true state of affairs, creating an almost irresistible compulsion for would-be parolees to admit guilt." This mischaracterizes the parole process, which "emphasizes the importance of voluntary, unvarnished truthtelling. California regulations for parole hearings provide . . . :  'The facts of the crime shall be discussed with the prisoner to assist in determining the extent of personal culpability.' (Cal. Code Regs., tit. 15, § 2236.)  But the board 'shall not' require an admission of guilt and 'shall not' hold a prisoner's refusal to discuss the crime against the prisoner." (*People v. Mitchell*, *supra*, 81 Cal.App.5th at p. 590, italics omitted.) Inmates are permitted to demonstrate signs of remorse, which may weigh in favor of granting parole, including that the "prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given indications that he understands the nature and magnitude of the offense." (Cal. Code Regs., tit. 15, § 2281, subd. (d)(3).)  However, the circumstances tending to show unsuitability for parole do not include lack of remorse or failure to acknowledge responsibility for the offense.  (*Id*., subd. (c).)

Although Underwood makes no arguments with respect to his individual case, he could have chosen to demonstrate remorse to the parole board without admitting that he personally killed Miyoshi. The jury could not reach a unanimous decision as to whether Underwood personally discharged a firearm causing Miyoshi's death. Instead, he was convicted on a felony-murder theory of liability, and it was found true that *a principal* discharged a firearm causing death. Even if Underwood felt compelled to confess to a crime (which the regulations do not require), he could have admitted that he was involved in the robbery, and stated that he regretted a man had been killed in the course of that robbery. It was not necessary for Underwood to admit to being the actual killer to demonstrate responsibility or remorse, and it follows that such an admission is not inherently unreliable.[4]

---

[4] Underwood further contends that, if we hold statements in support of parole applications presumptively unreliable, insufficient evidence supports the trial court's denial of relief. As we decline to make such a pronouncement, the contention necessarily fails.

13

## DISPOSITION

We affirm the trial court's order denying Andre M. Underwood's petition for resentencing under Penal Code section 1172.6.

NOT TO BE PUBLISHED.


MOOR, J.

We concur:


RUBIN, P. J.


KIM, J.